**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Sydni Deveraux,

Plaintiff,

v.

Lauren Sison, et al.,

Defendants.

No. CV-18-04882-PHX-DJH

**ORDER**

This matter is before the Court on Plaintiff Sydni Deveraux's ("Deveraux") Motion for Default Judgment as to Defendant Lauren Sison ("Sison") (Doc. 39). On June 5, 2019, default was entered against Sison for her failure to plead or otherwise defend this action (Doc. 18). Although Sison has not filed a response to Plaintiff's Motion for Default Judgment, Defendant Christina Duryea ("Duryea") has filed a Response in Opposition (Doc. 40), and Deveraux has filed a Reply (Doc. 41).

## I. Background

Deveraux's Second Amended Complaint ("SAC") brings five claims stemming from Defendants' allegedly false accusations of sexual assault. (Doc. 23 at ¶¶ 58–96). As alleged in the SAC, Deveraux, Sison, and Duryea are all peers in the burlesque performance industry. (*Id.* at ¶¶ 2, 23). Deveraux claims that both Sison and Duryea told others in the industry that Deveraux sexually assaulted Sison. (*Id.* at ¶ 4). Deveraux denies that any assault occurred, and she alleges that her sexual encounters with Sison were entirely consensual. (*Id.* at ¶ 30).

The SAC alleges that the two encounters between Deveraux and Sison occurred in November 2015 and January 2016. (*Id.*) As time went on, Deveraux's relationship with Sison fell apart. (*Id.* at ¶¶ 39–47). In September 2018, Sison told a producer from a New York burlesque production company that Deveraux had assaulted her in their encounters three years prior. (*Id.* at ¶¶ 9, 49). In October 2018, Duryea called another producer from an Arizona burlesque performance troupe and told her that Deveraux had sexually assaulted someone. (*Id.* at ¶ 51). Deveraux then received a call from the troupe, informing her that she would not be permitted to perform in an up-coming Phoenix show. (*Id.* at ¶ 57).

Deveraux alleges that she has suffered monetary, reputational, and emotional damage. (*Id.* at ¶¶ 61, 66, 76, 87, 95). She brings claims against both Defendants for false promotion, unfair competition, tortious interference with contract, defamation *per se*, and intentional infliction of emotional distress. (*Id.* at ¶¶ 58–96). For relief, she seeks compensatory and punitive damages of not less than $1 million, as well as an injunction preventing Defendants from making further defamatory statements about her. (*Id.* at 17).

## II. Default Judgment Standard

After an entry of default, a court may grant default judgment under Rule 55(b) of the Federal Rules of Civil Procedure if the judgment is merited under a multi-factor test. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). When multiple parties are involved, the court may direct entry of a final judgment as to fewer than all the parties only if it expressly determines there is no just reason for delay. Fed. R. Civ. P. 54(b).

If a jointly liable co-defendant defaults, a court should not enter judgement until the matter with all defendants is adjudicated in order to avoid incongruous judgments. *Frow v. De La Vega*, 82 U.S. 552, 554 (1872); *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001). In addition to jointly liable co-defendants, the Ninth Circuit also applies *Frow* to "those that are 'similarly situated,' such that the case against each rests on the same legal theory." *Garamendi v. Henin*, 683 F.3d 1069, 1082–83 (9th Cir. 2012) (quoting *First T.D.*, 253 F.3d at 532).

## III. Analysis

Deveraux's Motion for Default Judgment argues how the *Eitel* factors support an entry of default judgment against Sison. (Doc. 39-19 at 3–17). In her Response, Duryea does not discuss *Eitel* and instead argues that under *Frow* default judgment is inappropriate on a non-answering defendant when another defendant is present and contests the matter. (Doc. 40 at 1). Deveraux argues in her Reply that *Frow* is inapplicable here because the Defendants are not jointly or severally liable, nor are they similarly situated. (Doc. 41 at 3, 6).

The parties' briefings have narrowed the issues before the Court to the question of whether *Frow* prevents entry of default judgment against Sison. *Frow* involved fourteen defendants, eight of whom had been accused of a joint conspiracy to defraud the plaintiff in a land transaction. 82 U.S. at 552–53. Frow, one of the fourteen defendants, defaulted while the others answered. *Id.* at 553. The lower court entered default judgment against Frow, but the Supreme Court reversed the decision because of its concern that two contradictory judgments might result: one affirming the charge of joint fraud, the other denying it. *Id.* at 554. In order to avoid this "incongruity," the Court held that when a complaint makes a joint charge against several defendants and one defaults, courts should proceed in the case without entering final judgment on defaulting defendant. *Id.*

More than a century later, the Ninth Circuit in *First T.D.* cited *Frow* to support its decision that reversed a default judgment against some of many "similarly situated" defendants. 253 F.3d at 532. In *First T.D.*, the trustee in a bankruptcy proceeding filed an action against 132 of the bankruptcy estate's creditors. *Id.* at 524. The trustee claimed the creditors had never perfected their security interests in collateral notes and trust deeds under California law. *Id.* at 524–25. Of the 132 creditors, 44 answered and some moved for summary judgment on the issue of whether they had perfected their interests. *Id.* at 525. The bankruptcy court held that the creditors had perfected their security interests as a matter of law, despite the trustee's claims. *Id.* Four months after granting summary judgment on that issue, the trustee moved to enter default judgment against the non-answering defendants. *Id.* The court granted the trustee's motion and held in its order that the

defaulting defendants had not perfected their security interests, contradicting its previous order. *Id.* On appeal, the Ninth Circuit held that *Frow's* rule extended to these similarly situated creditors, whose transactions with the bankrupt entities followed "an identical pattern with almost identical legal documents." *Id.* at 532. Of greater importance, the court noted, the "central legal issue of each transaction was the same." *Id.* The Ninth Circuit held it would be "incongruous and unfair" if the trustee were able to obtain a default judgment against the non-answering defendants, when those who answered were able to defeat the trustee's claims as a matter of law. *Id.*

These cases help clarify the question before the Court, which is whether Sison and Duryea are so similarly situated that, if Deveraux were to obtain a default judgment now, this Court might issue incongruous and unfair orders later. *See id.; Garamendi*, 683 F.3d at 1082–83. As noted in the SAC, there are several key factual similarities: sometime in late 2018, both Defendants told people within the burlesque industry that Deveraux committed a sexual assault against Sison back in late 2015. (Doc. 23 at ¶ 4). The only distinguishing feature appears to be that Defendants told the same accusation to different people. (*Id.* at ¶¶ 49, 51). Furthermore, all five of Deveraux's legal claims are brought against both Defendants, who therefore face the same legal issues. (*Id.* at ¶¶ 58–96).

It is plain to see that Sison and Duryea are similarly situated and that the case against them rests on the same legal theories. *See Garamendi*, 683 F.3d at 1082–83. An order granting default judgment could be contradicted by a later order, which would be unseemly and possibly absurd. *See Frow*, 82 U.S. at 554. This suffices as just reason to delay entry of default judgment against Sison. *See* Fed. R. Civ. P. 54(b).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Default Judgment as to Defendant Lauren Sison (Doc. 39) is **DENIED**.

Dated this 23rd day of September, 2020.

Honorable Diane J. Humetewa
United States District Judge