**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sydni Deveraux, | No. CV-18-04882-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Lauren Sison, et al., | |
| Defendants. | |

This matter is before the Court on its own review. At the Final Pretrial Conference, the Court requested briefing on two issues: (1) how Defendants' alleged statements constituted a commercial advertisement or promotion under the Lanham Act, and (2) whether Plaintiff is a public figure for purposes of her defamation claim (Doc. 61). The parties discussed these issues and were ordered to file briefing on the matter (Doc. 64). Plaintiff Sydni Deveraux ("Deveraux") filed a brief on these issues (Doc. 68), and Defendant Christina Duryea ("Duryea") filed a brief in opposition (Doc. 69).

**I.     Background**

As alleged in the Second Amended Complaint ("SAC"), the parties are peers and competitors in the burlesque performance industry. (Doc. 23 at ¶¶ 2, 23). Deveraux alleges that she herself is a "highly successful, award-winning and internationally acclaimed burlesque performer . . . ." (*Id.* at ¶ 2). "Throughout Ms. Deveraux's nearly 15 year career in burlesque, she has been featured in hundreds of shows taking her to stages around the world." (*Id.* at ¶ 15).

1 All the SAC's claims stem from Defendants' allegedly false accusations of sexual assault. (*Id.* at ¶¶ 58–96). The SAC alleges that Duryea texted and called the producer of a burlesque performance troupe, Spellbound, and told her Deveraux had sexually assaulted someone despite knowing the statement to be false. (*Id.* at ¶¶ 51–52). Spellbound's producers later called Deveraux and told her she could no longer work with the troupe and cancelled an upcoming show in which Deveraux would perform. (*Id.* at ¶¶ 56–57).

At issue here are the First and Fourth Claims. The First Claim alleges that Defendants published false and misleading statements about her in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). (*Id.* at ¶¶ 58–61). The Fourth Claim is for defamation *per se*. (*Id.* at ¶¶ 77–88). During the Final Pretrial Conference, the Court noted it was considering dismissing the SAC's Lanham Act claim for failing to state a plausible claim. The Court also noted that the SAC seemed to show Plaintiff was a public figure for purposes of the defamation claim. The Court requested briefing on both issues, and it will now address each in turn.

**II.  Lanham Act Claim**

The Court will evaluate whether the SAC states a plausible Lanham Act claim under federal pleading standards. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6)."). Dismissal of a claim is proper when there is either (1) a lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011), *cert. denied, Blasquez v. Salazar*, 565 U.S. 1261 (2012). The Court will accept the SAC's allegations as true and draw on its own experience and common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Under that Lanham Act, a "person who . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact . . . in *commercial advertising* . . . misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is

likely to be damaged by such act." 15 U.S.C. § 1125(a)(1) (emphasis added).

The Court requested the parties discuss whether Duryea's statement to Spellbound is a "commercial advertisement." In the Ninth Circuit, to constitute commercial advertisement, a statement must be:

> (1) commercial speech; (2) by the defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)).

The parties dispute this test's fourth prong, whether the statement was sufficiently disseminated. "To be 'sufficiently disseminated,' the actions must be 'part of an organized campaign to penetrate the relevant market,' which typically involves 'widespread dissemination within the relevant industry.'" *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002)). The size of the industry in question typically plays a role in determining what constitutes widespread. For example, the Ninth Circuit has noted that "[w]here the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Act." *Coastal Abstract Serv.*, 173 F.3d at 735 (quoting *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996)). However, when the market is not limited, courts have found that "isolated disparaging statements" do not suffice to invoke the Lanham Act. *eMove*, 2012 WL 1379063, at *5 (quoting *Fashion Boutique*, 314 F.3d at 57).

Deveraux argues that Duryea's informal statements disseminated in the small, "siloed" market for burlesque performers in Phoenix, Arizona, are sufficient to constitute commercial advertising. (Doc. 68 at 3–4). Deveraux does not cite to any authority

explaining why the Court should focus only on this Phoenix market when the SAC claims Deveraux's services as a burlesque performer are in demand internationally. (*See* Doc. 23 at ¶¶ 2, 15). By her own words, there is a global market for her services and one specifically alleged instance of misinformation aimed at one market participant. Therefore, the Court finds Deveraux's allegation of an "isolated disparaging statement[]" in a global market does not constitute commercial advertisement sufficient to bring a plausible Lanham Act claim. *See Fashion Boutique*, 314 F.3d at 57 ("Thus, businesses harmed by isolated disparaging statements do not have redress under the Lanham Act; they must seek redress under state-law causes of action."). The Court will dismiss the SAC's First Claim under the Lanham Act claim for failure to state a claim. *See Iqbal*, 556 U.S. at 697.

**III. Public Figure**

The parties dispute whether Deveraux is a public figure for purposes of her defamation claim. This issue is important as it relates to constitutional speech protections. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 282–83 (1964) (holding that the First and Fourteenth Amendments require public officials to show actual malice in defamation actions). Generally, public figures bringing defamation claims must prove the defamatory statement was with actual malice. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334–37 (1974). Without supporting authority, Deveraux contends that her defamation claim is governed by New York law, under which the jury must decide whether she is a public figure. (Doc. 68 at 5). She concedes that under Arizona law, this issue may be decided as a matter of law. (*Id.* at 6). Therefore, before considering whether Deveraux is a public figure, the Court must first address whether New York or Arizona law applies to Deveraux's defamation claim.

*a. Applicable Law*

Deveraux's federal claims invoke this Court's original jurisdiction, which places the defamation claim under its supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Federal courts exercising supplemental jurisdiction over state claims apply the choice-of-law rules of the forum state. *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th

Cir. 1996). Arizona, the forum state, follows the Restatement (Second) of Conflict of Laws. *Pounders v. Enserch E & C, Inc.*, 306 P.3d 9, 11 (Ariz. 2013).

Under the Restatement, the law of the state where publication occurs generally governs. Restatement (Second) of Conflict of Laws § 149 (Am. L. Inst. 1971).[1] The Complaint alleges that Duryea called and texted the Arizona troupe's producer "in Arizona" and made the defamatory statements. (Doc. 23 at ¶¶ 51–52). Because publication was made in Arizona, Arizona defamation law applies, not New York law. *See* Restatement (Second) of Conflict of Laws § 149 cmt. d (Am. L. Inst. 1971) ("On occasion, the defamer's act of communication and the publication will occur in different states, such as when the defamer in state X mails a letter, or makes a telephone call, to a person in state Y. In such instances, the local law of the state where publication occurs will usually be applied to determine most issues involving the tort . . . .").

   *b. Public Figure Analysis*

In Arizona, whether an individual is a public figure is a question of law. *Cadigan v. Harrington in & for County of Pima*, 2019 WL 3540271, at *1 (Ariz. Ct. App. Aug. 2, 2019). The same is true in the Restatement. Restatement (Second) of Torts § 580A cmt. d (Am. L. Inst. 1977) ("The question of whether a plaintiff is a public official or a public figure . . . is one of law, not of fact, though the facts on which the determination is to be made may be in dispute and therefore subject to the determination of the fact finder."); *see also Burns v. Davis*, 993 P.2d 1119, 1126 (Ariz. Ct. App. 1999) ("Arizona views the Restatement [(Second) of Torts] as authority for resolving questions concerning rules in defamation cases."); *Hansen v. Stoll*, 636 P.2d 1236, 1239 (Ariz. Ct. App. 1981) (employing § 580A of the Restatement on public figures); *Sewell v. Brookbank*, 581 P.2d 267, 270 (Ariz. Ct. App. 1978) (same). Duryea argues that the facts as alleged in the SAC and in Deveraux's affidavits show she is a public figure. (Doc. 69 at 5). Given that Duryea does not contest the facts related to Deveraux's notoriety, the Court may decide whether

---

[1] The rule's exception addresses aggregate communications such as mass publication of books or newspapers. *See id.* at § 150. This exception is not applicable here because the alleged publication occurred over the phone.

- 5 -

she is a public figure as a matter of law.

There are two general categories of public figure: those who have such "persuasive power and influence" that they are all-purpose public figures, and those limited-purpose public figures who "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974); *see also Dombey v. Phoenix Newspapers, Inc.*, 724 P.2d 562, 569 (Ariz. 1986). There is no plain legal test under Arizona law to determine when someone qualifies as a public figure. In fact, the Arizona Supreme Court has noted that, "defining a public figure 'is much like trying to nail a jellyfish to the wall.'" *Dombey*, 724 P.2d at 569 (quoting *Rosanova v. Playboy Enters., Inc.*, 411 F.Supp. 440, 443 (S.D.Ga. 1976), *aff'd*, 580 F.2d 859 (5th Cir.1978)). The Ninth Circuit looks to the totality of the circumstances when deciding whether an individual is a public figure. *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 888 (9th Cir. 2016). The Court will, therefore, consider the question under the totality of the circumstances as required by federal law. *See* Restatement (Second) of Torts § 580A cmt. d (Am. L. Inst. 1977) ("Whether the plaintiff is a public official or a public figure is also a question of Federal constitutional law . . . .").

        *i.*     *All-Purpose Public Figure*

To be designated an all-purpose public figure requires "clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society . . . ." *Gertz*, 418 U.S. at 352. An individual may be "well known in some circles" and yet achieve "no general fame or notoriety in the community" such that he or she is not an all-purpose public figure. *Id.* at 351–52. The Ninth Circuit has attributed all-purpose public figure status to entertainers in the past. *See Manzari*, 830 F.3d at 888 (holding that a "the most well-known and popular soft-core porn actress in the world" was a public figure); *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1081 (9th Cir. 2002) (television actor from "Baywatch" was a public figure); *Carafano v. Metrosplash.com Inc.*, 207 F.Supp.2d 1055, 1071–72 (C.D. Cal. 2002) *aff'd on other grounds*, 339 F.3d 1119 (9th Cir. 2003) (television actress from "Star Trek" with a popular fan website was an all-purpose public figure).

Defendant argues that Deveraux's own statements show that she is an all-purpose public figure. (Doc. 69 at 7). On the record, Deveraux has sworn to the following:

> I am a highly successful, award-winning burlesque dancer who performs under the name "The Golden Glamazon," ranking annually in the Top 50 burlesque performers on the popular online publication 21st Century Burlesque for the last 8 years. Before Ms. Sison's allegations, I ranked number 15 in the world. . . . I was recognized with the award of 1st Runner Up for Queen at the Burlesque Hall of Fame Weekend, which supports the exotic World Museum in preserving the history and legacy of burlesque. In 2017, I took home another trophy for 2nd Runner Up for Queen at the Burlesque Hall of Fame Weekend. . . . My work in the field of burlesque dance includes classic burlesque performances across the country, shared acts with other kinds of artists and performers, dance instruction both online and for private lessons, and blogging on the subject. I also have taught workshops for fees, was invited and paid to speak publicly regarding burlesque, and was commissioned for burlesque photography projects and burlesque fashion modeling.

(Doc. 39-1 at 2).

At the Final Pretrial Conference, the Court drew the parties' attention to *Manzari v. Associated Newspapers*, in which the plaintiff, "a pioneer in the online adult entertainment industry," was found to be an all-purpose public figure. *Manzari*, 830 F.3d at 884. In 1995, Manzari launched a website that quickly became one the internet's most visited pages, which generated millions of dollars in revenue. *Id.* A study from 2000 found she had the "most popular site run by and featuring women on the Web, far surpassing the amount of Interment traffic for websites of such ubiquitous celebrities as Martha Stewart and Oprah Winfrey." *Id.* at 888. Manzari described herself as "the most downloaded woman in the Internet," her picture was featured on the cover of the *Wall Street Journal*, and she testified before the United Sates Congress during the passage of the Child Online Protection Act. *Id.* The Ninth Circuit found "Manzari undoubtedly qualifies as a public figure." *Id.* at 889.

Deveraux argues that Manzari's "notoriety and fame" far exceeds her own such that Deveraux herself cannot be considered an all-purpose public figure. (Doc. 68 at 7). She offers the following in contrast:

>Ms. Deveraux alleged that she ranked 15th on the 21st Century Burlesque Top 50 Burlesque dancers website poll, and 21st Century Burlesque's website (which is not related in any way to Plaintiff) ranks nearly 3,000,000th among in the top websites. Further, Ms. Deveraux's allegation that she has appeared in "hundreds of [burlesque] shows" without context, also does not afford her "public figure" status. While Plaintiff intends to clarify these allegations in the Complaint, many, if not all, of these burlesque shows take place at small venues—with less than a few dozen patrons in attendance on average—and private workshops, not public, large arenas or venues.

(*Id.*)  In this light, and considering the other statements made on the record, the Court can find that Deveraux's fame does not reach Manzari's.  Additionally, while Deveraux may be well known in the burlesque industry, the Court finds that she has not attained such pervasive fame such that she may be considered an all-purpose public figure.  *See Gertz*, 418 U.S. at 352.

      ii.     *Limited-Purpose Public Figure*

Some individuals become limited-purpose public figures when they thrust themselves to the forefront of a public controversy in order to influence the resolution of the issues involved. *Gertz*, 418 U.S. at 345.  Courts consider whether "(i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266 (9th Cir. 2013).  The matter here, an allegedly defamatory statement concerning sexual assault, is not a public controversy into which Deveraux has thrust herself in order to influence its resolution.  There is nothing on the record showing a public controversy existed when Duryea's allegedly defamatory statement were made. The statements are not related to Deveraux's participation in the controversy, and she has not voluntarily injected herself into the controversy in order to resolve it.  Therefore, upon this record, the Court cannot find that Deveraux is a public figure.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's First Claim in her Second Amended Complaint fails is **dismissed** for failure to states a claim under the Lanham Act.

**IT IS FURTHER ORDERED** that Plaintiff is not a public figure for purposes of the Second Amended Complaint's defamation claim.

Dated this 2nd day of March, 2021.

Honorable Diane J. Humetewa
United States District Judge