**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sydni Deveraux, | No. CV-18-04882-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Lauren Sison, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Sydni Deveraux's ("Plaintiff") Motion for Default Judgment (Doc. 76). The Motion requests the Court enter default judgment against Defendant Lauren Sison ("Defendant"), who has failed to appear or otherwise defend this action. The Motion is unopposed. For the following reasons, the Court grants the Motion in part.

## I.     Background

As alleged in Plaintiff's First Amended Complaint ("FAC") and her Second Amended Complaint ("SAC"), the parties in this matter are peers and competitors in the burlesque performance industry. (Docs. 10 at ¶ 25; 23 at ¶¶ 2, 23). Plaintiff alleges that she herself is a "highly successful, award-winning and internationally acclaimed burlesque performer . . . ." (Docs. 10 at ¶ 2; 23 at ¶ 2). Defendant and Plaintiff had consensual sex on two occasions, on November 1, 2015, and on January 2, 2016. (Docs. 10 at ¶ 32; 23 at ¶ 30). In about September of 2018, Defendant began telling people in the burlesque industry that Plaintiff had sexually assaulted her on November 1, 2015. (Docs. 10 at ¶ 54;

23 at ¶ 49).  As a result of Defendant's false accusations, several producers of burlesque shows backed out of agreements to have Plaintiff perform at their shows.  (Docs. 10 at ¶ 55; 23 at ¶ 57).

For relief, both the FAC and the SAC sought compensatory and punitive damages, a permanent injunction to prevent Defendant from disparaging or defaming Plaintiff, and an order directing Defendant to "undertake such remedial efforts . . . necessary to restore Plaintiff's reputation . . . ."  (Docs. 10 at 16; 23 at 17).  The Clerk of Court entered default against Defendant on June 5, 2021.  (Doc. 18).

In her Motion for Default Judgment, Plaintiff seeks $284,568.37 in damages.  (Doc. 77 at 22).  It also seeks an "order directing [Defendant] to remediate her false statements" and "an order enjoining [Defendant] from making the false statements and/or promotions" concerning Plaintiff.  (*Id.* at 24).

## II.    Default Judgment Standard

Although courts strongly prefer to decide cases on their merits, they may use their discretion to enter default judgment.  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); *see also* Fed. R. Civ. P. 55.  If default judgment is sought against a party that failed to plead or otherwise defend, courts must first determine they have subject matter jurisdiction over the matter and personal jurisdiction over the party.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

If a court finds jurisdiction, it must consider: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *Eitel*, 782 F.2d at 1471–72.  Upon default, a complaint's factual allegations are taken as true, except for those relating to damages.  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

/ / /

- 2 -

1    **III.    Jurisdiction and *Eitel* Analysis**

2           The Court will first address the question of jurisdiction.

3      **a.   Subject Matter Jurisdiction**

4           Plaintiff argues the SAC's Lanham Act claim provides the Court with federal

5    question jurisdiction under 28 U.S.C. § 1331.  (Doc. 77 at 10).  Although the Lanham Act

6    claim was dismissed for reasons summarized below, the Court elects to retain supplemental

7    jurisdiction over the state-law claims.  *See* 28 U.S.C. § 1367.  Therefore, the Court has

8    subject matter jurisdiction over this matter.

9      **b.   Personal Jurisdiction**

10          As to personal jurisdiction, the pleadings allege Defendant is a citizen of Tennessee.

11   (Docs. 10 at ¶ 7; 23 at ¶ 6).  As alleged, Defendant has performed in Phoenix, Arizona.

12   (Docs. 10 at ¶ 12; 23 at ¶ 24).  In addition, the pleadings allege that Defendant contacted

13   producers of a burlesque show in Phoenix, and she told them the false allegation that she

14   had been sexually assaulted by Plaintiff.  (Docs. 10 at  ¶ 54; 23 at ¶ 56).

15          There is no federal statute governing personal jurisdiction in this case, so Arizona

16   law applies, which allows personal jurisdiction to the maximum extent permissible by the

17   United States Constitution.  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir.

18   1997).  Plaintiff does not argue that the Court has general jurisdiction over Defendant.

19   Therefore, the Court will determine whether it has specific jurisdiction over Defendant, a

20   nonresident Defendant, with a three-part test:

21          (1) The nonresident defendant must do some act or consummate some
22          transaction with the forum or perform some act by which [s]he purposefully
            avails h[er]self of the privilege of conducting activities in the forum, thereby
23          invoking the benefits and protections[;] (2) [t]he claim must be one which
            arises out of or results from the defendant's forum-related activities[; and]
24          (3) [e]xercise of jurisdiction must be reasonable.

25   *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  "'Purposeful availment' requires

26   that the defendant 'have performed some type of affirmative conduct which allows or

27   promotes the transaction of business within the forum state.'"  *Sher v. Johnson*, 911 F.2d

28   1357, 1362 (9th Cir. 1990) (quoting *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191,

1   1195 (9th Cir. 1988)).  Here, the Court finds Defendant, by performing in Arizona and by

2   making defamatory statements in Arizona to an Arizona business, has purposefully availed

3   herself of the privilege of conducting business in Arizona, that the claims at issue here arise

4   from her activities in Arizona, and that the exercise of jurisdiction in this instance is

5   reasonable.    Therefore, the Court may exercise specific personal jurisdiction over

6   Defendant.

7        **c.  *Eitel* Analysis**

8        Having found jurisdiction over the matter and over Defendant, the Court will

9   proceed with its analysis of the *Eitel* factors.

10       **i.      Possibility of Prejudice to Plaintiff**

11       There is a possibility that Plaintiff will suffer prejudice if she is unable to obtain

12  relief for Defendant's actions. The Court notes that Plaintiff may have obtained some relief

13  when she agreed to dismiss her claims against former Defendant Nina Duryea.  (*See* Doc.

14  74).  However, Plaintiff is still entitled to her claims against Defendant Lauren Sison, for

15  which she would likely not be able to obtain relief without a default judgment.  Therefore,

16  this factor weighs in favor of entering default judgment.

17       **ii.     Merits of Substantive Claim & Sufficiency of the Complaint**

18       "Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the

19  sufficiency of the complaint are often analyzed together."  *Dr. JKL Ltd. v. HPC IT Educ.*

20  *Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010).  The SAC brings five Claims. The First

21  Claim is for false promotion in violation of the Lanham Act.  (Doc. 23 at ¶¶ 58–61).  The

22  Second Claim is for unfair competition under Arizona law.  (Doc. 23 at ¶¶ 62–66).  The

23  Third is for tortious interference with contract.   (*Id.* at ¶¶ 67–76).   The Fourth is for

24  defamation per se.  (*Id.* at ¶¶ 77–88).  Finally, the Fifth is for intentional infliction of

25  emotional distress.  (*Id.* at ¶¶ 89–96).[1]

26  ───────────────
[1] The Court notes that although Defendant was served with the FAC (Doc. 15), the record
27  does not show Defendant was served with the SAC.  However, the SAC's claims and the
    relief sought are identical to those in the First Amended Complaint ("FAC").  (*Compare*
28  Doc. 23 *with* Doc. 10).  No service is required on a party who fails to appear if the pleadings
    do not assert a new claim for relief.  Fed. R. Civ. P. 5(a)(2).  Therefore, the Court will
    evaluate the sufficiency of the claims based on allegations made in the SAC.

1    The SAC does not sufficiently plead the First and Second Claims.  First, a Lanham

2 Act claim requires a showing of a false or misleading statement in commercial advertising.

3 15 U.S.C. § 1125(a)(1).  By prior Order, the Court dismissed this claim because "isolated

4 disparaging statements" such as those made by Defendant Nina Duryea, do not constitute

5 commercial advertising.  (Doc. 72 at 3–4) (quoting *eMove Inc. v. SMD Software Inc.*, 2012

6 WL 1379063, at *5 (D. Ariz. Apr. 20, 2012).  Although the Court's analysis did not

7 explicitly cover the statements made by Defendant Lauren Sison, an analysis of those

8 statements produces the same result.  Defendant's statements are best characterized as

9 isolated disparaging statements, not commercial advertisements that give rise to a Lanham

10 Act claim.  Therefore, the Court reiterates its holding that the SAC fails to plead a Lanham

11 Act claim.

12    Second, the Court also finds that the SAC fails to sufficiently plead a claim for

13 unfair competition under Arizona law.  Such claims usually arise under trademark disputes

14 because "[t]he central tort in unfair competition at common law is known as 'palming off,'

15 or 'passing off.' It consists in a false representation tending to induce buyers to believe that

16 the defendant's product is that of the plaintiff . . . ."  *Fairway Constructors, Inc. v. Ahern*,

17 970 P.2d 954, 956 (Ariz. Ct. App. 1998) (quoting W. Page Keeton et al., *Prosser and*

18 *Keeton on the Law of Torts* § 120 (5th ed. 1984)).  Here, there are no allegations that

19 Defendant has attempted to palm off a product as one of Plaintiff's.  It is unclear how, if at

20 all, an unfair competition claim applies here.  The Court will, therefore, not grant relief

21 under the Second Claim.  Despite the inadequacies of the First and Second Claims, the

22 Court finds that the remaining claims are adequately alleged.

23    The Third Claim, tortious interference with contract, requires: "(1) the existence of

24 a valid contractual relationship; (2) knowledge of the relationship on the part of the

25 interferor; (3) intentional interference inducing or causing a breach; (4) resultant damage

26 to the party whose relationship has been disrupted; and (5) that the defendant acted

27 improperly."  *Snow v. W. Sav. & Loan Ass'n*, 730 P.2d 204, 211 (Ariz. 1986) (quoting

28 *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1041–43 (Ariz. 1985)).  The SAC

1    adequately alleges that Plaintiff had a contractual arrangement with an Arizona company,

2    and it is reasonable to infer that Defendant was aware of the contract because of her own

3    contact with the Arizona company. (Doc. 23 at ¶¶ 54, 57).  It further alleges that Defendant

4    intentionally communicated false allegations to the company.  (*Id.* at ¶¶ 54, 63).  And it

5    claims Plaintiff was harmed as a result of Defendant's false statements.  (*Id.* at ¶ 57).  The

6    SAC, therefore, adequately alleges a claim for tortious interference with contract.

7        The Fourth Claim, defamation per se, requires that Plaintiff show Defendant: "(1)

8    published a false and defamatory statement concerning the person, (2) knew the statement

9    was false and defamed the other, and (3) acted in reckless disregard of these matters or

10   negligently failed to ascertain them."  *Rogers v. Mroz*, 479 P.3d 410, 417 (Ariz. Ct. App.

11   2020).  Claims for per se defamation need not allege or prove special damages to be

12   actionable.  *McClinton v. Rice*, 265 P.2d 425, 429 (Ariz. 1953).  A statement is defamatory

13   per se, when the publication is "of such a nature that the court can presume as a matter of

14   law that the communication will tend to degrade or disgrace the party defamed." *Id.* at 429–

15   30 (citation omitted); *see also Modla v. Parker*, 495 P.2d 494, 496 n.1 (Ariz. Ct. App.

16   1972) ("An utterance is slander per se when its publication charges a contagious or venereal

17   disease, or charges that a woman is not chaste, or tends to injure a person in his profession,

18   trade or business, or imputes the commission of a crime involving moral turpitude.").  Here,

19   Defendant is alleged to have claimed that Plaintiff had sexually assaulted her to an Arizona

20   company, even though she knew the allegations were false.  The Court finds the SAC

21   adequately pleads a claim for defamation per se.

22       Finally, the SAC's Fifth Claim is for the intentional infliction of emotional distress.

23   This Claim requires Plaintiff show: "(1) that defendants' conduct could be characterized as

24   'extreme and outrageous'; (2) that defendants either intended to cause or recklessly

25   disregarded the near certainty that emotional distress would result from their conduct; (3)

26   that defendants' conduct actually caused severe emotional distress."  *Nelson v. Phoenix*

27   *Resort Corp.*, 888 P.2d 1375, 1386 (Ariz. Ct. App. 1994).  Falsely accusing someone of

28   sexual assault could be fairly characterized as extreme and outrageous conduct.  *See Patton*

*v. First Fed. Sav. & Loan Ass'n of Phoenix*, 578 P.2d 152, 155 (Ariz. 1978) (stating that conduct is extreme and outrageous when it could "be regarded as atrocious and utterly intolerable in a civilized community").   The Court infers from the allegations that Defendant intended to cause emotional distress.  *See* Fed. R. Civ. P. 9(b) (stating that state of mind may be alleged generally).  Plaintiff also alleges Defendant's actions have caused her to "lose sleep and suffer panic attacks from anxiety, stress and depression."  (Doc. 23 at ¶ 94).  Plaintiff, therefore, has adequately alleged this claim.

While two of the five Claims are insufficient, this factor, overall, favors entering default judgment.

### iii.    Sum of Money at Stake

In this factor, the Court considers the amount of money at stake in relation to the seriousness of a defendant's conduct.  *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002).  "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored."  *Gemmel v. Systemhouse, Inc.*, 2008 WL 65604, at *4 (D. Ariz. Jan. 3, 2008).

Plaintiff seeks $284,568.37 in monetary damages, not including damages under the failed Lanham Act claim.  (Doc. 77 at 22).  For reasons described further below, the Court finds that much of the requested monetary award is improper or insufficiently proven.  Plaintiff has only offered sufficient evidence for damages in the amount of $20,372.22.  Because Plaintiff seeks an amount that is largely based on inappropriate requests, this factor suggests default judgment is inappropriate.

### iv.    Possibility of Dispute Concerning Material Facts

While Defendant could have disputed Plaintiff's allegations, that time has passed.  At this stage, a plaintiff's allegations are taken as true.  *See Geddes*, 559 F.2d at 560.  Therefore, the possibility of dispute is low.  This factor favors entering default judgment.

### v.    Whether the Default was Due to Excusable Neglect

The record reflects that Defendant has been served.  (Doc. 15).  There is no indication that Defendant's failure to respond is due to excusable neglect.  Therefore, this

factor weighs in favor of entering default judgment.

### vi.   Policy Favoring Decisions on the Merits

The Court is unable to reach the merits of this case because Defendant has failed to plead or otherwise defend this action, and Plaintiff has settled with Defendant Christina Duryea.  Therefore, this factor weighs against granting default judgment.

Overall, the Court finds the *Eitel* factors support entry of default judgment.  Having found default judgment proper, the only remaining issue is to determine the relief to which Plaintiff is entitled.

## IV.   Relief

When awarding relief, the Court may not award anything that differs in kind or exceeds what was demanded in the pleadings.  Fed. R. Civ. P. 54(c).  Here, Plaintiff seeks monetary damages as well as an injunction requiring Defendant to "remediate her false statements about Plaintiff" and ordering her to refrain from making false statements about Plaintiff.  (Doc. 77 at 24).  The Court will first address the request for monetary damages.

### a.  Monetary Damages

In her pleadings, Plaintiff sought compensatory and punitive damages.  (Docs. 10 at 16; 23 at 17).  Now, Plaintiff seeks a total of $284,568.37 in damages, an amount she must "prove-up" with evidence.  *See Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) (party seeking money judgment on default must prove-up damages).  This usually requires the submission of admissible evidence.  *Id.*  "As a general rule, damages which result from a tort must be established with reasonable certainty.  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), *abrogated on different grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). In addition, "[w]hen punitive damages are sought by default judgment, the court must have independent evidence to support the award because punitive-damages-worthy conduct alleged in a complaint is not regarded as admitted by default." *Alutiiq Int'l Sols., LLC v. OIC Marianas Ins. Corp.*, 149 F. Supp. 3d 1208, 1215 (D. Nev. 2016) (citing *Matter of Gober*, 100 F.3d 1195, 1205 (5th Cir. 1996) (conduct sufficient to warrant punitive

1   damages is not regarded as admitted by default)).  The Court finds that Plaintiff has only

2   offered sufficient proof for a small portion of her claimed monetary damages.

3          The Court will first address the request of $90,372.22 for lost income in 2019, 2020,

4   and 2021.  (Doc. 77 at 23).  She calculates, based upon gross income from 2016, 2017, and

5   2018 that her average annual income was about $36,791.00.  (Doc. 76-1 at ¶ 31).  To

6   demonstrate this, she has appended tax records and accounting records to her Motion.  (*See*

7   *e.g.*, Doc. 76-13).  As a result of the false accusations made against her, Plaintiff claims

8   she only made a total of $16,418.78 in 2019, $11,500 in 2020, and essentially no income

9   in 2021.  She argues she is entitled to the difference in those amounts from her expected

10   income.  The Court finds that Plaintiff has reasonably proved-up her request for lost income

11   during the year of 2019.  For example, Plaintiff has appended copies of letters from

12   Burlesque show venues revoking their offers for her to perform in 2019.  (*See e.g.*, 76-10).

13   Therefore, the Court will award a monetary judgment in the amount of $20,372.22.

14          However, the Court declines to award the remainder of the requested monetary

15   damages because they are redundant, insufficiently proven, or different in kind from those

16   requested in the pleadings.

17          To begin, Plaintiff's claimed lost profits as a direct result of Defendant's activity for

18   the years 2020 and 2021 have not been proved with certainty.  During 2020 and 2021, the

19   live entertainment industry as a whole suffered tremendous losses as a result of the Covid-

20   19 pandemic.  Beyond her own affidavit, Plaintiff has not brought forth any evidence

21   showing these losses were attributable to Defendant's actions and not because of

22   pandemic-related lockdown measures.  Therefore, the Court finds that Plaintiff has not

23   shown with reasonable certainty that Defendant is liable for lost income in 2020 and 2021.

24          Plaintiff requests $5,300 in damages because Defendant's false allegations caused

25   her performances in 2019 to be cancelled at three different venues: Spellbound Burlesque,

26   the Vancouver Burlesque Festival, and the Samaha Burlesque Festival.  (Doc. 7 at 22).  In

27   a supporting affidavit, Plaintiff avers she reasonably expected to make $800 from her

28   performance at Spellbound Burlesque, $2,000 at the Vancouver Burlesque Festival, and

another $2,000 at the Savannah Burlesque Festival.  (Doc. 76-1 at ¶¶ 19, 22, 24).  This amounts to $4,800.  Plaintiff does not explain the difference between this and the requested amount of $5,300.  However, this is a moot point because the requested compensation of $5,300 or $4,800 would have fallen into Plaintiff expected income for 2019.  Therefore, by awarding lost income for that year, Plaintiff has already been compensated for this amount.

Plaintiff also seeks $2,600 as a result of medical expenses, which she avers she spent for psychological counseling.  (Doc. 76-1 at ¶ 41).  Plaintiff attaches no other evidence of this expense such as receipts, or even a physician's note.  Therefore, the Court finds that Plaintiff has not established with reasonable certainty that she has incurred this medical expense as a result of Defendant's activities.

Next, Plaintiff seeks $50,000 in "general damages." (Doc. 77 at 23).  Nowhere does Plaintiff explain how she derives the $50,000 figure or what in particular it consists of.  Therefore, for failing to prove-up her general damages claim, the Court declines to award this amount.   In addition, to the extent that her claim for general damages is distinct from the compensatory damages already awarded, they were not claimed in her pleadings and so cannot be awarded here on default judgment.

Plaintiff also seeks $36,296.15 for attorney fees as part of her damages.  However, "[i]n Arizona, courts generally do not construe 'damages' to include attorneys' fees." *City Ctr. Exec. Plaza, LLC v. Jantzen*, 344 P.3d 339, 343 (Ariz. Ct. App. 2015).  Furthermore, the pleadings do not state that they will be seeking an award of attorney fees.  Therefore, an award of attorney fees is improperly requested on a motion for default judgment because it is different in kind from what was requested in the pleadings.  If Plaintiff believes she is eligible and entitled to an award of reasonable attorney fees, it is properly requested in accordance with Local Rule 54.2.

Finally, Plaintiff seeks $100,000 in punitive damages against Defendant.  (Doc. 77 at 23).  Beyond the pleadings' allegations and her own averments, Plaintiff has provided no "independent evidence" of Defendant's activities to support an award of punitive damages.  *Alutiiq Int'l Sols*, 149 F. Supp. 3d at 1215.  In addition, Plaintiff has failed to

- 10 -

explain why $100,000 is an appropriate amount.  Therefore, the Court declines to award punitive damages.  *See Hawks v. Seery*, 2021 WL 2209045, at *3 (D. Ariz. June 1, 2021) (declining to award $100,000 in punitive damages when not supported by independent evidence and when party seeking damages failed to "explain how they arrived at $100,000").

**b. Injunctive Relief**

Plaintiff seeks two types of injunctive relief.  First, she seeks an order "directing Defendant to remediate her false statements . . . ."  (Doc. 77 at 24).  Second, she seeks an order enjoining Defendant "from making false statements and/or promotions" about Plaintiff.  The only case Plaintiff cites to support the requested injunction is a case in which the District Court of Arizona enjoined parties from using a trademark.  (*Id.*) (citing *Am. Auto. Ass'n, Inc. v. Triple A Auto Glass, LLC*, 2012 WL 1107737, at *3 (D. Ariz. Apr. 2, 2012).  But that trademark case is not applicable to the issue at hand, which is largely based on a defamation claim.  *See Am. Auto. Ass'n*, 2012 WL 1107737, at *2 (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.")).

Whether to grants injunctive relief is a matter of discretion.  *Ahwatukee Custom Ests. Mgmt. Ass'n, Inc. v. Turner*, 2 P.3d 1276, 1279 (Ariz. Ct. App. 2000).  Courts consider equitable factors including "the relative hardships and injustice; the public interest; misconduct of the parties, if any; delay on the part of the plaintiff; and the adequacy of other remedies."  *Id.* at 1280.

Here, the Court does not believe injunctive relief is necessary as other remedies are available.  First, it is not clear to the Court what it would mean for Defendant to "remediate" her false statements and why such an injunction is necessary.  Defendant will have a monetary judgment entered against her, which is intended to compensate for the damages she has incurred.  Certainly, that will constitute remediation.  Second, it is not clear why the Court needs to enter an injunction to restrain Defendant from making false statements

about Plaintiff.  The usual remedy for such behavior, as Plaintiff knows, is to file a claim for defamation or another appropriate cause of action.  An injunction ordering Defendant to refrain from tortious activity is unnecessary as the remedy of a civil action remains available.  Therefore, the Court declines to grant the injunctive relief Plaintiff seeks.

**V.      Conclusion**

For these reasons, the Court grants Plaintiff's Motion for Default Judgment in part and will enter judgment in her favor in the amount of $20,372.22.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Entry of Default Judgment (Doc. 76) is **GRANTED** in part.  Default judgment shall be entered by the Clerk of Court in favor of Plaintiff and against Defendant Lauren Sison in the amount of $20,372.22.

**IT IS FURTHER ORDERED** that Plaintiff is awarded post-judgment interest at the applicable federal rate pursuant to 28 U.S.C. § 1961(a).

**IT IS FINALLY ORDERED** that Plaintiff's counsel may file a motion for fees and costs pursuant to Local Rule of Civil Procedure 54.2 within fourteen (14) days of the date of this Order.

Dated this 22nd day of October, 2021.

Honorable Diane J. Humetewa
United States District Judge